**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:15-cv-00242-MR-DLH**

| | | |
|---|---|---|
| **RITA KOTSIAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **CMC II, LLC, LA VIE CARE CENTERS,** | ) | |
| **d/b/a Consulate Health Care,** | ) | |
| **CONSULATE MANAGEMENT** | ) | |
| **COMPANY, FLORIDA HEALTH CARE** | ) | |
| **PROPERTIES, LLC, and ESIS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court to determine whether the dismissal

of this action is to be with or without prejudice [See Minute Entry dated May

8, 2017]. Also pending before the Court are the Plaintiff's motions entitled

"Motion to Vacate Court's Order Of 5.8.17 Denying Plaintiff's Request for a

Continuance And then, Grant a Continuance" and "Motion to Vacate Court's

Order Of 5.8.17 To Dismiss Plaintiff's Case On Grounds that Defendants

Committed Fraud upon the Court." [Docs. 110, 111].

For the reasons stated below, the Plaintiff's Complaint is dismissed

with prejudice and the Plaintiff's motions are denied.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, proceeding *pro se*, filed this action on October 23, 2015, against the Defendants asserting claims of discrimination pursuant to Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act. [Doc. 1]. The Plaintiff chose to participate in the Western District of North Carolina Pro Se Settlement Assistant Program (hereinafter "Pro Se Program") and pursuant thereto, Plaintiff was appointed counsel for the limited purpose of assisting in a mediated settlement conference held on April 14, 2016, that resulted in an impasse. [Docs. 16, 18, 20]. Thereafter, on May 6, 2016, the parties filed their certification of initial attorney conference and discovery plan (hereinafter "CIAC"). [Doc. 21]. The Plaintiff asserted in the CIAC that the Defendants had engaged in criminal misconduct, obstruction of justice, racketeering, violated her Fourth, Fifth, and Fourteenth Amendment rights, and would perpetrate fraud upon the Court. [Id. at 3, 4].[1]

On May 10, 2016, the Court entered a Pretrial Order and Case Management Plan (hereinafter "Case Management Order"), setting this matter for trial during the May 8, 2017 civil trial term. [Doc. 22]. On October 11, 2016, the Court amended the Case Management Order, extending

---

[1] The Plaintiff has persisted with these types of assertions throughout the entire course of this litigation.

certain deadlines to complete discovery and file motions; however, the matter remained set for trial during the May 8, 2017 civil term. [Doc. 58]. On March 8, 2017 the Court supplemented the Case Management Order setting forth requirements and deadlines related to the upcoming trial, such as the filing of evidentiary motions, the designation of the excerpts of deposition transcripts to be used at trial, the exchange of exhibits and exhibit lists, and the filing of trial briefs, proposed jury instructions and proposed issues. [Doc. 87]. The matter still remained set for trial during the May 8, 2017 civil term. [Id.].

On March 24, 2017, the Court held a hearing on the Defendants' motions for summary judgment, which were denied. [See Minute Order dated March 24, 2017]. At the hearing, the Court reiterated that the matter was set for trial during the May 8, 2017 civil trial term and that the parties should prepare accordingly. [Doc. 94 at 43, 44]. The Court informed the Plaintiff of the challenges she faced in proceeding to trial *pro se* and strongly encouraged the Plaintiff to obtain counsel and to do so immediately. [Id. at 44, 45]. The Court, however, made clear to the Plaintiff that if an attorney made an appearance on her behalf on the eve of trial and requested a continuance, such request would be denied due to the long set trial date. The Plaintiff was also advised that it is the practice of this Court to set trial

dates very far in advance so that all involved parties can plan accordingly, and therefore, continuances are granted only in extraordinary circumstances. [Id. at 50, 51].

On April 5, 2017, the Court granted the Defendants' second motion for a Judicial Settlement Conference (hereinafter "JSC") and set the JSC for April 24, 2017. [Docs. 88, 89].[2] The Court referred the matter to the Honorable David C. Keesler, United States Magistrate Judge, for the purpose of conducting the JSC. [Doc. 89]. On April 13, 2017, Judge Keesler, *sua sponte*, entered an order referring the matter to the Pro Se Program, and pursuant thereto, appointed counsel to Plaintiff for the limited purpose of assisting with the JSC. [Doc. 91]. On April 13, 2017, Plaintiff filed a motion entitled "Plaintiff's Motion for Alternative Hearing of Court Ordered Judicial Settlement Conference Due to Hardship." [Doc. 95]. The next day, April 14, 2017, was the deadline set by the Case Management Order for the Plaintiff to file any designation of deposition excerpts for use at trial and any motions in limine or other evidentiary motions regarding trial. [See Docs. 58, 87]. The Plaintiff, however, failed to make any such filings by that deadline despite having filed the motion regarding the JSC only the day before. On April 18,

---

[2] The Defendants filed their first motion for Judicial Settlement Conference on January 5, 2017, which the Court denied without prejudice. [Docs. 77, 82].

2017, Judge Keesler denied the Plaintiff's motion regarding a change in the JSC and further ordered that if the Plaintiff had not already submitted her confidential settlement brief to his chambers, she was directed to do so immediately. [Docs. 95, 96].

On April 19, 2017, the Court's chambers received a telephone call from attorney Charles Brewer (hereinafter "Mr. Brewer") who indicated that he and another attorney, Gary Dodd (hereinafter "Mr. Dodd"), would possibly make an appearance in the case for the Plaintiff. However, Mr. Brewer expressed concern about making such a late appearance in light of the case schedule. In response to the aforementioned telephone call, the Court noticed a hearing for a status conference. [See Notice of Hearing dated April 19, 2017].[3] On April 21, 2017, at the status conference, Mr. Brewer and Mr. Dodd expressed concern about making appearances in the matter without the trial date being preemptively continued to the next civil trial term. The Plaintiff also made a motion to continue (hereinafter "First Motion to Continue") the JSC and trial date so that she could have counsel.[4] The Court

---

[3] The following were present with the Court at the status conference: Plaintiff, Mr. Brewer, Mr. Dodd, Defendants' counsel via telephone, the Court Reporter, the Courtroom Deputy, and the Chambers' Law Clerks.

[4] Plaintiff also expressed dissatisfaction with her Pro Se Program appointed counsel and erroneously blamed said counsel for her own failure to submit the confidential settlement brief as directed by Judge Keesler's Order. [Doc. 96].

stated that it was not inclined to grant a continuance, particularly considering that no counsel had made an appearance on behalf of the Plaintiff and that Mr. Brewer and Mr. Dodd were merely exploring the *possibility* of making an appearance. After hearing further from Mr. Brewer, Mr. Dodd, the Plaintiff, and the Defendants' counsel, the Court denied the motion to continue the trial without prejudice and ordered that the JSC go forward as scheduled. The Court further determined that Mr. Dodd would be allowed to make a special appearance limited to the JSC proceeding.  The Court also conveyed to the parties that if an attorney made a general appearance on behalf of Plaintiff for trial, then the posture of the case would change in a manner that would constitute a reasonable basis for a continuance. The Court, however, also informed the parties that an appearance on behalf of Plaintiff would need to be made soon in order to avoid disruption of the docket and minimize any prejudice to the Defendants. On that basis, the Court made clear to the Plaintiff that unless Mr. Brewer, Mr. Dodd, or any other attorney filed a notice of appearance on behalf of Plaintiff by April 26, 2017, at 12:00 p.m., the case deadlines and trial date would remain unchanged.

On April 24, 2017, the JSC resulted in an impasse and the April 26, 2017, deadline passed without an attorney filing an appearance on behalf of the Plaintiff. [See Minute Entry dated April 24, 2017]. It was, therefore, clear

to the Plaintiff that the trial would go forward on May 8, 2017, and the deadlines as set in the Case Management Order (as amended) stood. The Plaintiff, however, failed to make any filings as required by the deadlines set forth in the Case Management Order, even though the Defendants made their filings in a timely manner. [See Docs. 87, 92, 97, 98, 99, 100].

On April 28, 2017, the Court held a lengthy final pretrial conference with the parties. [See Minute Entry dated April 28, 2017]. At that time, the Plaintiff had still not made any of the required pretrial filings, despite virtually all of the deadlines provided by the Case Management Order having passed. [See Docs. 58, 87]. The Plaintiff then for the first time asserted that she had understood Judge Keesler's April 13, 2017, Order to stay the pretrial filing deadlines until the JSC was completed. The Plaintiff referred to the section of Judge Keesler's Order that stated, "[a]ll parties to this lawsuit will participate in [the JSC] pursuant to the [Pro Se] Program and as directed by this Order before undertaking any other action with respect to this lawsuit." [Doc. 91 at ¶ 1]. In full context, the Plaintiff's reading of Judge Keesler's Order was erroneous, but the Court was again willing to give the Plaintiff the benefit of the doubt, considering her *pro se* status. The Court, however, noted the erroneous reading by Plaintiff did not justify her failure to make any of the required pretrial filings *after* the JSC. The Court also noted that the Plaintiff

had actually benefited from her delay because the Defendants had complied with the Case Management Order and thus the Plaintiff was given advanced warning as to Defendants' contentions regarding evidentiary issues.

At the final pretrial conference, the Plaintiff also asserted that the JSC had been "very traumatic," and accused the Defendants of having perpetrated a fraud upon the Court. The Plaintiff then inquired as to when the Court would pierce the corporate veil, and asserted that any result at the trial of this matter would be void. The Plaintiff went on to admit that she had not subpoenaed any witnesses for the trial and had not exchanged any exhibits with the Defendants, despite having received the Defendants' exhibits. The Plaintiff often made statements that were not pertinent to the Court's inquiries and would refer to documents that, after rummaging through her voluminous papers and boxes, she could not find. Once again, the Plaintiff made another motion to continue (hereinafter "Second Motion to Continue") the trial date. The Court denied the Plaintiff's request for a continuance, but under the circumstances, gave the Plaintiff a new deadline of 12:00 p.m. on May 1, 2017, to provide her exhibits to the Defendants.

On May 2, 2017, well past nearly all of the Plaintiff's deadlines and only six (6) days before trial, the Plaintiff filed a motion entitled "Plaintiff's Motion for Extension of Time to Continue Trial" (hereinafter "Third Motion to

Continue"). [Doc. 101]. The Court noticed the motion to be heard on May 5, 2017. [See Text Order dated May 2, 2017].[5] At the hearing, the Plaintiff admitted that she still had not exchanged her exhibits with the Defendants and justified her failure to comply with the Case Management Order by again asserting (without offering any support) that the Defendants had engaged in criminal misconduct, fraud, and unconstitutionally deprived Plaintiff of due process.[6] Throughout the hearing, the Plaintiff again was disorganized, unable to find exhibits or papers for her arguments, and was unable to meaningfully address the Court's inquiries in regard to the status of her preparation for trial, notwithstanding the Court's previous admonitions to seek counsel or to prepare earnestly for trial. The Plaintiff also presented the Court with a partial exhibit list that the Court found wholly inadequate. Plaintiff's exhibit list only designated broad categories of documents as possible exhibits with virtually no identification of what particular documents

---

[5] At the hearing, the Court informed the parties that it was uncommon for the Court to set for hearing a motion to continue so close to the trial date, and absent extraordinary circumstances, would normally deny such a motion without a hearing.

[6] It was a perpetual theme throughout this litigation that if the Plaintiff failed to do what she was required to do it was the result of the Defendant's criminal and unconstitutional acts, and if she was not granted whatever she asked it was the result of such misconduct by the Defendants or the bias or misconduct by the Court.

would actually be used as exhibits, in complete disregard of the instructions set forth in the Case Management Order.[7] [See Doc. 87].

Later in the hearing, the Plaintiff stated for the first time that she wanted to play some unspecified recording or recordings during the trial. The Defendants objected, arguing that Plaintiff had never provided a copy of such recording(s) in discovery, and had not even disclosed the existence of such recording(s). The Plaintiff then inquired into how to designate excerpts of deposition transcripts from another matter that she intended to present at the trial of this matter. The Court directed Plaintiff to email the deposition transcripts and designations to Defendants' counsel as soon as possible and provide an exhibit list that followed the instructions of the Case Management Order by 9:00 a.m. on May 8, 2017, the morning of trial.

The Plaintiff also requested she be accommodated during the trial by being allowed to use some sort of cardboard podium so that she could stand during much of the proceedings. Despite the Plaintiff not having produced any medical evidence regarding the need for such an accommodation, the Court agreed to allow the Plaintiff to stand and to use some sort of podium.

_____

[7] For example, the Plaintiff listed as one exhibit "Pre 1/20/14 Employment Medical Records." The Plaintiff also included a number of exhibits called "Notice and corroborating evidence" which are distinguishable only by date. The Plaintiff also included a number of exhibits that simply referenced a collection of documents, such as "Documents demonstrating Discharge was due to disability" and "Documents that prove facts that impute[ ] liability for harassment to the employer."

The Court offered Plaintiff various options available in the courthouse to accommodate the Plaintiff's asserted need. The Plaintiff rejected all of the accommodations the Court offered and insisted upon the use of the aforementioned cardboard podium. The Court advised the Plaintiff that if she wished to use the cardboard podium that she needed to email photographs of it to the Court that afternoon, in order to allow the Court to determine if the device could pass through security and be used in the courtroom. Despite the Court's clear instructions and directions regarding all of the above, the Plaintiff did not provide anything to the Court or the Defendants, or make any effort to comply with the Case Management Order deadlines as extended by the Court.

At 7:36 a.m. of the morning of trial, the Plaintiff emailed a member of the Clerk's Office staff a motion entitled "Emergency Motion for Continuance" (hereinafter "Fourth Motion to Continue"). [Doc. 105].[8] Attached to the Plaintiff's motion was a picture purporting to be the files worked on by the Plaintiff in preparation for trial. [Doc. 105-1].[9] The Plaintiff's motion asserted,

_____

[8] As a *pro se* litigant, the Plaintiff could file documents with the Court by mailing them to the Clerk's Office or presenting them to the Clerk's office in person. Emailing documents to members of the Clerk's office staff is not a permissible method of filing by any litigant, *pro se* or represented. Under the circumstances, however, the Court nevertheless allowed the docketing of the Plaintiff's motion so that the matter could be addressed on the record that day.

[9] Notably, Plaintiff never produced a photo of the cardboard podium she wished to use at trial, yet was able to attach this photo of the files to her emergency motion to continue.

among other things, that as a result of the trial preparation she had been "forced" to do by the Court, she had exacerbated her original back injury and had to "seek evaluation and treatment this morning of trial in hope of continuing at a later day without the pain and risk of further injury." [Doc. 105 at 2]. The Plaintiff's motion requested that the matter be continued until she could "recover adequately to proceed or find competent counsel." [Id.] The Plaintiff's motion provided no medical documentation or physician statement. At 8:09 a.m. the Plaintiff also left a message on the chambers voicemail indicating she had emailed the Clerk's Office and the parties to the case her Fourth Motion to Continue, and that she was on her way to urgent care.

On Monday, May 8, 2017, at 9:01 a.m., the matter was called for trial and the Plaintiff failed to appear in Court to prosecute her action. In light of Plaintiff's Fourth Motion to Continue, the Court released the jury pool to an early lunch to see if Plaintiff would appear and withheld ruling on the motion. In the interim, the Defendants' objected to the Plaintiff's motion to continue and filed their Motion to Dismiss for Failure to Prosecute pursuant to Federal Rule of Civil Procedure 41(b). [Doc. 107]. The Court received no further communications or documentation from the Plaintiff, and at no time did Plaintiff appear to prosecute her action or advocate her motion. The documents Plaintiff subsequently filed with the Court showed no medical

condition that prohibited her appearance. Upon resumption of the matter after the lunch break, the Court made inquiries of Defendants' counsel and was informed that Plaintiff had not made any further communications with Defendants' counsel and that Plaintiff had also failed to provide or exchange any materials as directed by the Court over the prior weekend or the morning of trial. The Court then proceeded to address the Plaintiff's motion to continue and the Defendants' motion to dismiss, making lengthy findings on the record.

With regard to Plaintiff's Fourth Motion to Continue, the Court addressed each asserted ground in the Plaintiff's motion. The Plaintiff asserted as follows in her motion:

> 1) In Plaintiff's attempt to follow the Court's order to go to trial on May 8, 2017, Plaintiff exceeded her physical capacity and medical restrictions.
>
> 2) This preparation was forced upon her by this Court that admitted that granting such continuances were common in most federal jurisdictions but not by this Court.
>
> 3) As a result of this preparation Plaintiff has an exacerbation of her original back injury.
>
> 4) Any continuation to trial at this point will have severe consequences.
>
> 5) There is a Constitutional guarantee of "no cruel or unusual punishment" or any "trial by torture."

6) This court was and is aware of the Plaintiff's injury and there are ample medical records in the record in support of this.

7) Even the drive to the Courthouse can easily exacerbate this condition. (cf. Dr. Rudin's driving restitutions on Plaintiff in the Record)

8) Therefore Plaintiff must seek evaluation and treatment this morning of trial in hope of continuing at a later day without the pain and risk of further injury.

9) The plaintiff once again reminds this Court of incontrovertible evidence that defendants committed felonies by stopping all indemnity and medical payments WITHOUT a court order, which is required by North Carolina Statute.

10) This Court can only serve justice if it considers the opinion of North Carolina Court of Appeals on withholding benefits after a failed return to work trial. <u>Celia A. Bell, Employee-Plaintiff v. Goodyear Tire an Rubber Company, Employer, Liberty Mutual Insurance Company, Carrier, efenants No. COA 15-1299 (21 Marcy 2017).</u>

Defendants' failure to follow the law is the cause of this delay of trial and have now once again caused injury to the Plaintiff.

Wherefore Plaintiff requests this trial be continued until Plaintiff can recover adequately to proceed or find competent counsel.

In Addition, we wish the Court to take Notice that once again as happens always and ONLY before an important Court date, Plaintiff's NEW printer "mysteriously" broke on Sunday, May 7.

> All medical and treatment records will be available to the Court upon request.

[Doc. 105].

With regard to the Plaintiff's claims that she exceeded her medical restrictions and exacerbated her physical injuries in preparing for trial (paragraphs 1, 3, 6, 7, and 8 of the Plaintiff's motion), the Court found that the medical records referenced in the motion pertained to treatment she received from 2011 to 2014 and therefore did not address the Plaintiff's present medical condition. The Court further found that Plaintiff had failed to present any documentation or evidence that supported her claims of current physical incapacity, and that she had never before raised her alleged physical incapacity as a grounds for continuing the trial despite having made multiple motions to continue in the past. Noting that the Plaintiff's stated reason for not being able to appear for trial was her claimed need to seek treatment at an urgent care facility, the Court noted that the Plaintiff had made no mention of any kind of condition or medical diagnosis that required emergency evaluation or treatment. Therefore, the Court found the Plaintiff had failed to present any basis from which the Court could find that the

Plaintiff presently had any type of medical condition that would prevent her from being present for trial.[10]

With regard to the Plaintiff's claims that "forcing" her to trial constituted "cruel or unusual punishment" that would result in "severe" harm to her (paragraphs 2, 4, and 5 of the Plaintiff's motion), the Court noted its long-standing policy on setting trial dates well in advance and its expectation that deadlines set forth in the Case Management Orders would be followed accordingly. The Court noted that this policy allows for greater efficiency of the docket and ensures the progress of litigation. While acknowledging that motions to continue are generally disfavored, the Court noted that it will always entertain motions to continue which provide a legitimate basis for a continuance.[11] As for the alleged "severe consequences" the Plaintiff claimed she would suffer if the trial were not continued, the Court found that that there was no basis in the record to indicate what that harm would be.

With regard to the Plaintiff's claims of misconduct by the Defendants (paragraphs 9 and 10 of the Plaintiff's motion), the Court found that even if

---

[10] When given the opportunity to present medical evidence showing the Plaintiff's condition at the time she went to urgent care on May 8, 2017, the Plaintiff still presented nothing that would have supported a finding that the Plaintiff's medical condition was such that would excuse her attendance.

[11] The Court even set for hearing Plaintiff's Third Motion to Continue, despite the motion being filed only six (6) days before trial and the face of the motion appearing to provide no adequate basis or justification for granting.

such allegations were true, the Defendants' misconduct did not justify any lack of preparedness on the part of the Plaintiff and therefore did not warrant a continuance of the trial. As to the Plaintiff's bare assertion that her "NEW" printer had "mysteriously" broken, the Court found that the Plaintiff had presented nothing to show that there had been any failure of her printer or what may have been "mysterious" regarding any such failure. As for Plaintiff's assertion that printer failures "always and only [occur] before an important court date," the Court noted that Plaintiff had provided no support for this, nor had she previously complained of such. Indeed, the Court remains unclear as to what assertion the Plaintiff was attempting to make with regard to her printer, except that she seems to imply that its failure is somehow the Defendants' fault.

Lastly, having made the above findings in regard to each of Plaintiff's assertions, the Court found that the parties had been directed to appear for trial, and while the Defendants' counsel and corporate representatives were present, the Plaintiff had not appeared. The Court further found that court had been in session through the morning and reconvened after a lunch break at 1:30 p.m., but that at no time during that period did the Plaintiff appear or attempt to contact the Court in order to further advocate her motion or prosecute her case. Accordingly, the Court found that there was no basis to

grant the Plaintiff's Fourth Motion to Continue and therefore denied the motion.

Having disposed of Plaintiff's Fourth Motion to Continue, the Court proceeded to address the Defendants' motion to dismiss and made lengthy findings pertinent to the factors under Federal Rule of Civil Procedure 41(b). Specifically, the Court found that the Plaintiff had missed the deadlines under the Case Management Order for: designations of deposition excerpts for use at trial, the filing of motions in limine and other evidentiary motions, and the exchange of exhibits and exhibits list, despite multiple extensions to these deadlines. The Court also found that the Plaintiff had not followed the Court's directions with regard to the deposition designations from another case, alleged recordings of conversations, or the request for accommodations.

The Court also noted that it had previously encouraged the Plaintiff at the summary judgment hearing of this matter to seek counsel because Plaintiff's preparation was clearly inadequate to be able to move forward with her case at trial. Indeed, at the summary judgment hearing in March 2017, the Court had admonished Plaintiff to prepare in earnest for the trial or find counsel, but there had been no evidence that the Plaintiff had made any serious effort to prepare for the trial in the several weeks since that hearing.

The Court noted that despite the denial of multiple motions to continue, the Plaintiff made no discernable progress in preparing for trial.

The Court also found that the Plaintiff continued to assert and make allegations that the Defendants have committed various types of misconduct, (which in the Plaintiff's mind apparently absolved her from the need to prepare for trial) without presenting any evidence to support these allegations. The Court found that Plaintiff had been able to spend substantial time and effort preparing and advocating multiple motions to continue but seemed to be unable to expend the same effort towards preparing arguments and documents for the Court's final pretrial conference. In fact, the one filing the Plaintiff made by the deadline set forth in the Case Management Order, namely her witness list, was prepared at the direction of the Court during a break at the May 5, 2017, hearing on one of the Plaintiff's motions to continue.[12] Moreover, until the Plaintiff's final motion to continue, none of the motions to continue were based on any physical limitations. Indeed, the Court noted, the Plaintiff's abilities and demeanor indicated she appeared to be physically capable of proceeding with trial as late as the hearing held on May 5, 2017.

---

[12] Even though the witness list was filed timely, it was clearly inadequate. Although the case involved issues of disability discrimination, the Plaintiff did not list a medical expert or healthcare provider as a witness and had not subpoenaed any witnesses.

With regard to the Defendants, the Court found the Defendants' counsel had met all deadlines as called for in the Case Management Order and appeared with the Defendants' corporate representatives on May 8, 2017, ready to proceed for trial. Furthermore, the Defendants brought witnesses for the trial, including witnesses who had flown in from the state of Florida and were present in the courtroom and prepared to testify at trial.

Upon making the above lengthy findings at the hearing, the Court proceeded to consider the factors under Rule 41(b), ruling that each factor weighed against the Plaintiff and in favor of the Defendants. The Court therefore granted the Defendants' motion to dismiss. The Court then summoned the jury pool that was called and assembled at the courthouse for the purpose of this trial and discharged them from further duty.

While the Court orally granted the Defendants' motion to dismiss, the Court withheld determination of whether the dismissal was to be with or without prejudice. The Court directed the parties that they would be allowed to submit briefs regarding the characterization of the dismissal. [Minute Order dated May 8, 2017]. The Court instructed that the briefs were to be submitted by the Defendants by May 19, 2017 and the Plaintiff by May 26, 2017, and after reviewing the submitted arguments, the Court would then

enter a written order disposing of whether the dismissal would be with or without prejudice. [Id.]

On May 19, 2017, the Defendants timely filed their Memorandum of Law in Support of Characterizing the Prior Dismissal of Plaintiff's Complaint as "With Prejudice." [Doc. 109]. On May 30, 2017, the Plaintiff made three simultaneous filings entitled: "Plaintiff's Motion to Vacate Court's Order Of 5.8.17 Denying Plaintiff's Request for a Continuance And then, Grant a Continuance" [Doc. 110]; "Plaintiff's Motion to Vacate Court's Order Of 5.8.17 To Dismiss Plaintiff's Case On Grounds that Defendants Committed Fraud upon the Court" [Doc. 111]; and "Plaintiff's Response to Martin K. Reidinger's 5.8.2017 Order to Submit a Brief On Whether His Dismissal of Plaintiff's Case Should be With Or Without Prejudice." [Doc. 112]. On June 13, 2017, the Defendants filed their responses and reply to Plaintiff's filings. [Docs. 113, 114, 115]. There have been no replies filed by the Plaintiff.

Having been fully briefed by the parties, this matter is now ripe for disposition.

## II.    DISCUSSION

### A.    Dismissal With Prejudice

Federal Rule of Civil Procedure 41(b) states:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may

move to dismiss the action or any claim against it.
Unless the dismissal order states otherwise, a
dismissal under this subdivision (b) and any
dismissal not under this rule—except one for lack of
jurisdiction, improper venue, or failure to join a party
under Rule 19—operates as an adjudication on the
merits.

Fed. R. Civ. P. 41(b).

The Federal Rules of Civil Procedure
recognize that courts must have the authority to
control litigation before them, and this authority
includes the power to order dismissal of an action for
failure to comply with court orders. In this case, [the
Plaintiff] failed to respond to a specific directive from
the court.

Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir.), cert. denied, 493 U.S. 1084

(1990).

When dismissing an action pursuant to Rule 41(b), the Court should

consider four factors in determining whether that dismissal should be with

prejudice: (1) the personal responsibility of the plaintiff; (2) the prejudice to

the defendant; (3) a history of deliberately proceeding in a dilatory manner;

and (4) the availability of any less drastic remedy. Ballard, 882 F.2d at 95

(citing Chandler Leasing Corp. v. Lopez, 669 F.2d 919, 920 (4th Cir.1982)).

These four factors are not a rigid test and the propriety of a dismissal

depends on the particular circumstances of the case. Id.

The Court granted the Defendants' Motion to Dismiss for Failure to Prosecute [Doc. 107] and directed the parties to submit briefs on the issue of whether the dismissal of this matter should be characterized as with or without prejudice. In addition, the Court also made lengthy findings on the record that remain applicable in the determination of this matter in light of the parties' arguments, the Plaintiff's motions, and the history of this proceeding as previously described.

### 1. Personal Responsibility of the Plaintiff

The Plaintiff was personally responsible for the preparation of her case as she chose to proceed *pro se*. The Case Management Order and the numerous admonitions by the Court make clear that Plaintiff was well aware of her responsibilities in this proceeding. The Plaintiff made no serious effort to secure counsel despite having been warned well in advance how difficult the trial preparation would be. The Plaintiff also made no serious effort to prepare for the trial of this matter thereafter. Clearly, all of the Plaintiff's failures throughout this entire matter are the personal responsibility of the Plaintiff. This is particularly true considering the Plaintiff, although proceeding *pro se*, had demonstrated before the trial date her ability to file pleadings, motions, objections, responses, and replies. [See Docs. 1, 2, 37, 51, 59, 64, 72, 80, 85, 95, 101, 105].

The Plaintiff's filings subsequent to the dismissal of her action have further shown that Plaintiff attempts to absolve herself of responsibility by disparaging the Defendants and the Court. [See Docs. 110, 111, 112]. The Plaintiff continues to cavalierly make accusations of fraud, misconduct, and even potential murder, without presenting any evidence thereof. For example, the Plaintiff asserts:

> It appears Defendants may have even committed murder to prevail in this case and intimidate Plaintiff. This must and will be addressed in the proper venue, yet impacts on the instant case. The failure of Defendants to deny their association with the Clinton Foundation, the failure of Defendants to list ALL their corporate affiliations, the failure of Defendants to produce true financial records impacts this case. It has been said the Eye of Justice sees all, and a world judgment for Defendants will be at hand as the case is made more public. If Martin K. Reidinger has any shred of integrity, he would address the criminal misconduct of Defendants, and would continue the case until the next Court Calendar. This Court cannot and must not introduce the precedent of "Reidinger's Trial by Torture."

[Doc. 112 at ¶ 23].

Therefore, Plaintiff's personal responsibility for failing to comply with the Court's orders weighs heavily in favor of dismissing this matter with prejudice.

## 2.      Prejudice to the Defendants

The Defendants incurred substantial costs in preparing for trial, as well as addressing all of the issues arising from Plaintiff's multiple motions to continue and her failure to comply with the Court's orders leading up to the trial date. Despite the numerous last minute hearings, and Plaintiff's lack of compliance with the mandatory deadlines, the Defendants met all deadlines as called for in the Case Management Order and appeared on May 8, 2017, ready to proceed with the trial. Furthermore, the Defendants brought several witnesses for the trial, including witnesses who had flown in from Florida and were present in the courtroom and prepared to testify at trial.

Therefore, the factor regarding the prejudice incurred by the Defendants weighs heavily in favor of dismissing this matter with prejudice.

## 3.      History of Deliberately Proceeding in a Dilatory Manner

The Plaintiff has exhibited an extensive history of deliberately proceeding in a dilatory fashion. As described in detail above, the Plaintiff repeatedly failed to comply with the Court's deadlines and even when she was shown leniency and those deadlines were extended, she failed to comply with the directives of the Court. The Plaintiff's actions throughout this case and her multiple failures to comply with even the most basic deadlines, make clear that the Plaintiff had no intention of proceeding to the trial on the

May 8, 2017 trial date, despite Plaintiff's knowledge of the trial date for almost a year, the denial of multiple motions to continue, and the repeated admonitions by the Court to prepare for trial.

The Plaintiff has a history of ignoring the Court's authority to set deadlines in this matter, including the trial date, and would justify her disregard by making completely unsupported allegations. For example, in Plaintiff's Third Motion to Continue she asserted:

> The defendants herein are also spoiling and adulterating documents in this cause and preparing to bring them to trial to confound the jury. These blatant violations of Plaintiff's substantive right to due process, to life, liberty, and property, to be secure in her person, house, papers, and effects are now, have been and will continue to be issues that this Honorable Court must resolve before any adjudication.

[Doc. 101 at ¶ 10].

The Plaintiff's last-minute filing of her Fourth Motion to Continue was merely another chapter in the Plaintiff's pattern of deliberately proceeding in a dilatory and obstructive manner. The medical records submitted by the Plaintiff subsequent to her Fourth Motion to Continue (including her visit to urgent care the morning of the trial) show that the Plaintiff was not faced with an emergency and the records themselves fail to reflect any restrictions that would have hindered the Plaintiff from appearing on the day of trial. Despite

Plaintiff's apparent ability to have come to Court on the day of trial, she made no efforts to appear and did not even attempt any further communications with the Court after having merely left a voicemail on the chambers telephone some 51 minutes before the case was to be called for trial. Further, despite the Plaintiff's claims in her Fourth Motion to Continue to have worked on preparing her case for the trial date, she has still failed to provide the Court any documentation or exhibits that indicate her asserted preparation for trial. Instead, the Plaintiff makes bold statements and allegations without presentation of any support, and expects the Court to simply acquiesce in order to allow the Plaintiff to prolong this matter and proceed at her leisure.

It is also noted that the Court summoned a jury pool for the trial of this matter, and those citizens appeared on May 8, 2017, in order to discharge their civic duty. These members of our community were greatly inconvenienced by the Plaintiff's antics, and the taxpayers incurred a substantial expense.

Therefore, the Plaintiff's history of proceeding in a dilatory manner weighs heavily in favor of dismissing this matter with prejudice.

### 4. Less Drastic Remedy

This action was not dismissed as a sanction for the Plaintiff's misconduct.[13] It was dismissed because the Plaintiff failed to appear to prosecute her case when it was duly called for trial. This factor regarding the consideration of less drastic sanctions is instructive in weighing whether the dismissal should be with or without prejudice.

The Court "may take sanctions of a less drastic nature, such as payment of costs, attorneys' fees, or dismissal without prejudice." Chandler Leasing Corp., 669 F.2d at 921. The Court, however, "must do more than decide that a less severe sanction exists, for there is no doubt that such will always be the case. The relevant inquiry is whether or not a lesser sanction is feasible and appropriate in view of the history of each case and the plaintiff's conduct." Zaczek v. Fauquier Cty., Va., 764 F. Supp. 1071, 1078 (E.D. Va. 1991), aff'd, 16 F.3d 414 (4th Cir. 1993).

The Court considers first the option of dismissing the case without prejudice and taxing the costs and fees against the Plaintiff. In this case, particularly in light of the Plaintiff's representations as to her own financial condition, assessing costs and fees against the Plaintiff would be a futile act.

---

[13] The Court makes no ruling on whether the Plaintiff's misconduct in this case warrants dismissal.

In fact, given Plaintiff's claimed financial condition, entering a substantial judgment against Plaintiff for costs and attorney fees is arguably a harsher sanction than dismissal with prejudice.[14]  The Court next considers the alternative of dismissing the case without prejudice but excluding certain witnesses or evidence from any ultimate trial.  In this matter, however, the Plaintiff disregarded the Court's orders, failed to prepare for trial, and did not even subpoena witnesses to trial. Therefore, excluding witnesses or evidence would be equally unavailing.  Such sanctions would be essentially useless and have no impact on the Plaintiff.

The Court needs to control its docket, to not only move cases forward to conclusion but also to manage the docket in a manner that does not disadvantage any party or parties in other cases. The Court, in an effort to move this matter forward, afforded the Plaintiff extraordinary leniency throughout this matter but the Plaintiff made no serious effort to comply with the directives and orders of the Court.  There is no reason to believe Plaintiff would conduct herself any differently or prepare her case any more expeditiously were this matter to be dismissed without prejudice. Moreover,

---

[14] In the same vein, if the Court were to enter a dismissal without prejudice and tax the costs and fees against the Plaintiff, she would then be required to pay those costs and fees before she could refile.  See Fed. R. Civ P. 41(d).  Pragmatically, this would have the same effect as a dismissal with prejudice, except with the added detriment to the Plaintiff of having a judgment against her.

there is no reason to believe that the Plaintiff would not again disrupt the docket by making frivolous filings, bold and defamatory accusations, and baseless motions to continue. This is particularly true in light of Plaintiff's various assertions contained in her subsequent filings in response to the dismissal of her case, such as:

> Now Plaintiff, injured not just by Defendants for close to 6 years, but also by the Court in their disregard for Plaintiff's right to due process and right for accommodation for physical restrictions and poverty in their denial of access to justice, are forcing her to yet again 'jump through hoops' that are causing further injury.

[Doc. 110 at ¶ 19].

> Plaintiff did have the help of her husband, characterized by Martin K. Reidinger as 'a hindrance.' Mr. Kotsias helped Plaintiff read the law, helped research the law, helped prepare her for hearings, gave guidance and edited her brief. When she was incapacitated in the final week and hours before the trial was to commence, he actually typed Plaintiff's Motion for Continuance. Still the 'playing field' is not level. Mr. Kotsias himself has physical limitations, having been poisoned during his work and 4 decade fight against corruption and organized crime, which includes the Defendants in the instant case. The Court refuses to allow him to act as Plaintiff's co-counsel,[15] and stacks the deck against her with several law firms, scores of attorneys, and then ignores the criminal misconduct of defendants.

---

[15] The Plaintiff's husband is not a licensed attorney.

[Doc. 112 at ¶ 16]. Given Plaintiff's willful disregard of the Court's orders and their purpose, there is little reason to believe any available conclusion other than a dismissal with prejudice would be appropriate. The Court has considered a lesser remedy of dismissing the Plaintiff's matter without prejudice. However, the history of this matter demonstrates that the Plaintiff has no regard for the authority of the Court, and dismissing this matter without prejudice would be ineffective and empower the Plaintiff to further undermine the Court's authority.

Therefore, the lack of any viable alternative remedy weighs heavily in favor of dismissing this matter with prejudice.

Accordingly, in light of all of the factors under Rule 41(b), the Court concludes that this matter should be dismissed with prejudice.

### B. Plaintiff's Motions

The Plaintiff filed two motions simultaneously with her brief addressing the question of the nature of the dismissal. The Plaintiff's motions are entitled "Motion to Vacate Court's Order Of 5.8.17 Denying Plaintiff's Request for a Continuance And then, Grant a Continuance" and "Motion to Vacate Court's Order Of 5.8.17 To Dismiss Plaintiff's Case On Grounds that Defendants Committed Fraud upon the Court." [Docs. 110, 111].

The Plaintiff's motions make the same familiar assertions that have been prevalent throughout Plaintiff's filings in this matter and continue the pattern of making these bold accusations without presenting any support therefor.

Upon review of the Plaintiff's motions, the Court determines they are without merit. For the reasons previously stated, the Plaintiff has shown no good cause for a continuance and the Plaintiff has presented no evidence of any fraud perpetrated by the Defendants upon the Court. Accordingly, the Plaintiff's motions are denied.

**IT IS, THEREFORE, ORDERED**, that the Defendants' Motion for Dismissal for Failure to Prosecute [Doc. 107] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Plaintiff's motions [Docs. 110, 111] are **DENIED.**

**IT IS SO ORDERED.**

Signed: August 8, 2017

Martin Reidinger
United States District Judge